1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6
7

KENYA ROSE G.,

                        Plaintiff,

8        v.

9    ACTING COMMISSIONER OF SOCIAL
     SECURITY,

10                       Defendant.

Case No. 22-cv-05597-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11
12

        Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13   defendant's denial of plaintiff's application for Title II disability insurance benefits ("DIB").

14   Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule

15   MJR 13, the parties have consented to have this matter heard by the undersigned

16   Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was

17   not disabled. Dkt. 4, Complaint.

                        I.        ISSUES FOR REVIEW

18       A.  Whether the ALJ Erred at Step Five

19       B.  Whether the ALJ Erred in Evaluating Medical Opinion Evidence

20       C.  Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom

21           Testimony

22       D.  Whether the Case Should Be Remanded Based on New Evidence

23
24
25

II.     BACKGROUND

Plaintiff filed her application for a period of disability and disability insurance benefits on August 26, 2019, alleging a disability onset date of August 17, 2019. Administrative Record ("AR") 343, 358, 464. Plaintiff remains insured through June 30, 2023. AR 23. Plaintiff's application was denied initially and on reconsideration. AR 356, 372. Administrative Law Judge ("ALJ") Traci Hixson held a hearing on April 15, 2021 and issued a decision on June 2, 2021 finding plaintiff not disabled from her alleged onset date through the date of the ALJ's decision. AR 19–43, 264–302.

Plaintiff requested review of the ALJ's decision and submitted additional evidence to the Appeals Council. *See* AR 1–2. The Appeals Council exhibited the additional evidence but denied plaintiff's request, finding that the additional items of evidence "do not provide a basis for changing the Administrative Law Judge's decision." AR 1.

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

IV.   DISCUSSION

A.  Whether the ALJ Erred at Step Five

At step five of the sequential evaluation process, the ALJ has the burden of determining whether "the claimant can perform a significant number of other jobs in the national economy." *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the claimant is not able to do so, the ALJ must find the claimant disabled. *Id*. The ALJ can meet this burden by utilizing the testimony of a vocational expert (VE). *See Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

"In making this determination, the ALJ relies on the [*Dictionary of Occupational Titles*], which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845–46 (9th Cir. 2015) (citing *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990)). "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles,* which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1153 n. 8 (9th Cir. 2007). Thus, an ALJ errs if they rely on a VE's testimony "without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*." *Id*. at 1152.

Here, at step five, the ALJ relied on the VE's testimony in finding plaintiff not disabled. AR 36–37. During the hearing, the VE testified that an individual with plaintiff's

3

residual functional capacity ("RFC") can perform the jobs of: classifier, DOT code 361.687-014 (57,000 positions available nationally); folder, DOT code 369.687.018, (30,000 positions available nationally), and garment sorter, DOT code 222.687-014 (22,000 positions available nationally). *See* AR 291–92. The VE confirmed with the ALJ that these findings were consistent with the DOT. AR 293.

During cross-examination, plaintiff's counsel inquired of the VE about the program the VE had used to arrive at these numbers. AR 295–299. The VE stated it was a program called OccuBrowse Plus, which provides job numbers by Occupational Employment Statistics ("OES") groups, rather than by individual DOT codes (though the VE confirmed that each OES group contains several individual DOT codes). *See* AR 295–296. The VE further explained that to calculate job number estimates, the VE multiplied the total number by 10 percent (for example the estimated OES group employment for final assembler of eyeglasses and sunglasses was 222,000 and the VE multiplied by 10 percent to arrive at 22,000 jobs for the individual DOT code), a method, which, according to the VE, is "based on [his] experience with this position." AR 295–296.

Plaintiff's counsel then asked the VE if he was familiar with the program Job Browser Pro. AR 296. The VE confirmed that he was, but stated he preferred OccuBrowse Plus because the results from JobBrowser Pro did not seem "practical," though the VE acknowledged that the latter program is a source "used and recognized" by other VEs and the government. *See* AR 296.

Plaintiff first contends the ALJ erred in relying on the VE's testimony without analyzing the VE's methodology. Dkt. 10 at 4–5. Specifically, plaintiff takes issue with

1  the fact that OccuBrowse Plus did not provide numbers by individual DOT codes, that

2  the VE did not explain why he took 10 percent of the number of jobs available under

3  each OES group, and the VE's refusal to use Job Browser Pro. *Id.*

4      The Court recognizes that, "a VE's testimony is one type of job information that is

5  regarded as inherently reliable; thus, there is no need for an ALJ to assess its

6  reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). "[A] qualified

7  vocational expert's testimony as to the number of jobs existing in the national economy

8  that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five

9  finding." *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022). But the Ninth

10  Circuit has also recognized that a VE's testimony "is not incontestable." *See Buck*, 869

11  F.3d at 1051–52. For example, when there is "any apparent conflict between the VE's

12  testimony and the DOT, regardless of whether a claimant raises the conflict before the

13  agency," the ALJ is "required to investigate and resolve" that conflict. *See Shaibi v.*

14  *Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

15      In this case, however, the VE confirmed with the ALJ that his testimony was

16  consistent with the DOT. *See* AR 293. Additionally, even though OccuBrowse Pro

17  produces job numbers by OES groups, as plaintiff's counsel states, each group contains

18  "many different DOT codes," therefore the Court cannot say the VE's testimony conflicts

19  with the DOT. AR 295–96. *See Rashidi v. Kijakazi*, No. 22-55121, 2022 WL 17974638,

20  at *2 (9th Cir. Dec. 28, 2022) (finding the ALJ did not err when the ALJ overruled the

21  claimant's objection to the VE's testimony after "determin[ing] that the vocational

22  expert's testimony [wa]s consistent with the information contained in the Dictionary of

23  Occupational Titles.")

24

25                                    5

As to plaintiff's argument contesting the VE's method of taking ten percent of the job numbers from each OES group, and challenging the VE's decision to use OccuBrowse instead of Job Browser Pro, the Ninth Circuit has observed that "VEs may use a wide range of data sources and methodologies to generate job-number estimates." *White v. Kijakazi*, 44 F.4th 828, 834 (9th Cir. 2022) ("there is no requirement that a VE disclose the primary data underlying the estimates prior to, during, or after the hearing"). In support of her argument, plaintiff cites to two cases, but neither are persuasive—one is concurrence from an out-of-circuit opinion, while the other concerns a VE using a different grouping called the Standard Occupational code. *See* Dkt. 10 at 4–5.

Further, other courts in this circuit have found no error when a VE uses OES groups to determine job numbers. *See Wright v. Colvin*, No. CV 12-1893-SP, 2014 WL 5456044, at *5 (C.D. Cal. Oct. 27, 2014), *aff'd sub nom. Wright v. Berryhill*, 692 F. App'x 496 (9th Cir. 2017) (finding no error with VE's use of OES group as "a starting point" because VE did not exclusive rely on software's raw numbers, but further relied on her expertise to determine numbers of jobs available based on claimant's skills); *see also Tamara L. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-01601-MC, 2022 WL 898201, at *3 (D. Or. Mar. 28, 2022) (finding no error with ALJ's reliance on VE's job numbers based on OES groups); *Mae v. Saul*, No. 1:19-CV-03061-MKD, 2020 WL 3620092, at *14 (E.D. Wash. Mar. 6, 2020) (finding the ALJ reasonably relied on VE's method of "whittling down the numbers from the OES group" because of VE's expertise and clear account of methodology).

Plaintiff next contends the ALJ erred for failing to consider the alternative job

1    numbers provided by her counsel. Dkt. 10 at 5.

2         After the hearing, plaintiff's counsel submitted to the ALJ a report of the number

3 of available positions, nationally and in the state of Washington, for the jobs of classifier,

4 folder, and garment sorter using the same DOT codes provided by the VE during the

5 hearing. AR 36, 595–605. The report, created using JobBrowser Pro, showed there are:

6 81 positions available nationally and 8 positions available statewide for the job of

7 classifier; 130 positions available nationally and 1 positions statewide for the job of

8 folder; and 248 positions available nationally and 2 positions statewide for the job of

9 garment sorter. AR 601–604. The ALJ considered the report but relied on the VE's

10 findings instead because "of the vocational expert's qualifications and expertise in

11 extrapolating data about various jobs." AR 37.

12         When there is "vast discrepancy between the VE's job numbers and those

13 tendered by the [claimant], presumably from the same source, is simply too striking to

14 be ignored," the ALJ must address this inconsistency. *See Buck v. Berryhill*, 869 F.3d

15 1040, 1052 (9th Cir. 2017). But an "ALJ [is required] to consider competing job numbers

16 only if they constitute significant probative evidence." *Kilpatrick v. Kijakazi*, 35 F.4th

17 1187, 1194 (9th Cir. 2022).

18         Plaintiff relies on *White v. Kijakazi*, 44 F.4th 828, 836–37 (9th Cir. 2022), where

19 the Ninth Circuit remanded after finding the job estimates provided by claimant's

20 counsel, who used the same methodology as the VE, "significant and probative." In

21 *White*, the VE used SkillTRAN—though it is unclear what specific program—while

22 claimant's counsel used JobBrowser Pro in providing drastically lower numbers

23 estimates. *See id*. at 838. But in considering whether competing numbers are

24

25                                7

"significant and probative," several Ninth Circuit cases have focused on similar

methodologies and "identified expertise." *See Kilpatrick*, 35 F.4th at 1194; *Kremlingson*

*v. Saul*, 800 F. App'x 531, 532–33 (9th Cir. 2020) (finding data and analysis provided by

claimant "insufficient to preclude the agency from relying on the vocational expert's

testimony" because claimant "failed to support [challenge to VE's testimony] with any

expert analysis or declaration" and instead provided "only her lay interpretation")*;*

*Rashidi v. Kijakazi*, No. 22-55121, 2022 WL 17974638, at *2 (9th Cir. Dec. 28, 2022)

(finding job numbers provided by claimant's counsel "did not constitute significant

probative evidence" because counsel did not "explain where the specific estimated

numbers come from, how they were derived, or by whom").

In this case, the VE and plaintiff's counsel used different programs—the VE used

OccuBrowse, while plaintiff's counsel used JobBrowser Pro. AR 36, 295–96, 595–605.

To the extent that plaintiff argues the programs are the same because they are both

owned by SkillTRAN, plaintiff is still unable to show the same methodology was used

because the VE did not simply rely on the numbers produced by the program. As

explained, the VE employed a method based on his expertise to arrive at his findings.

*See* AR 296.

Plaintiff also has not shown that her counsel produced evidence from an expert

who had an "identified expertise in calculating job figures in the national economy." *See*

*Kilpatrick*, 35 F.4th at 1194. Further, it is unclear from the record exactly how plaintiff's

counsel produced their findings. Although the report from JobBrowser Pro does show

job numbers by individual DOT code, the cover letter only briefly states that the

numbers are "directly from Job Browser Pro" and is absent of any explanations of

plaintiff's counsel's methodology. *See* AR 595–96. The cover letter also highlights JobBrowser Pro's reliability as a source, and cites to an internal Social Security memo listing JobBrowser Pro as an "acceptable" program; yet the same memo lists OccuBrowse Pro as being acceptable as well. *See* AR 595.

Plaintiff has failed to show that the job results submitted by her counsel were "significant probative evidence," therefore the Court finds the ALJ did not err in relying on this data at step five. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022).

B.  Whether the ALJ Erred in Evaluating Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinion of (1) Dr. Hamilton, and contends the ALJ erred in finding the opinions of (2) Dr. Haney and Dr. Donahue, and (3) Dr. Alto and Dr. Hander persuasive. Dkt. 10 at 6–10.

Plaintiff filed her applications after March 27, 2017. AR 343, 358, 464. Under the regulations applicable to this case, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. § 404.1520c(c)(1), (c)(2). Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

1    1.  Dr. Hamilton

2        In February 2017, Dr. Andrew Hamilton completed an evaluation of plaintiff's

3 condition, and opined that based on plaintiff's fibromyalgia, post-traumatic stress

4 disorder ("PTSD"), anxiety, and depression, plaintiff is limited in her ability to work. *See*

5 AR 1252. Dr. Hamilton described that when plaintiff's fibromyalgia's symptoms are

6 severe, plaintiff is "advised to avoid heavy lifting/pushing/pulling > 15lbs and to take

7 frequent breaks to rest muscles." *Id*. When asked about plaintiff's limitations with lifting

8 and carrying, Dr. Hamilton checked a box that plaintiff is limited to "sedentary work,"

9 defined, in pertinent part, in the form as "Able to lift 10 pounds maximum and frequently

10 lift or carry such articles as files and small tools." AR 1253.

11       The ALJ discounted Dr. Hamilton's opinion because it was (1) provided prior to

12 plaintiff's alleged onset date, and (2) unsupported by his own findings.[1] AR 34–35.

13       With respect to the ALJ's first reason, though medical opinions issued before a

14 claimant's onset date are of "limited relevance," *Carmickle v. Comm'r, Social Sec.*

15 *Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008), the ALJ must still consider all opinion

16 evidence. *See Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (finding that

17 ALJ erred in failing to consider medical opinions predating claimant's alleged onset

18 disability). *See also* 20 C.F.R. § 416. 920(c) ("we will articulate in our determination or

19 decision how persuasive we find *all* of the medical opinions and all of the prior

20 administrative medical findings in your case record") (emphasis added). That Dr.

21 Hamilton's opinion was rendered before plaintiff's alleged onset date is not a legally

[1] The ALJ stated Dr. Hamilton's opinion included "internal inconsistencies," but the Court construes this as an evaluation of Dr. Hamilton's opinion's supportability because the ALJ referred to the "supporting explanations presented" by Dr. Hamilton himself in discounting it. *See* 20 C.F.R. § 404.1520c(c)(1); AR 35.

valid reason to discount it, thus the ALJ erred in doing so.

With respect to the ALJ's second reason, the more "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," the more persuasive it is. *See* 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ explained that while Dr. Hamilton wrote that plaintiff is advised to limit lifting, pushing, and pulling anything that is more than 15 pounds, Dr. Hamilton also indicated in the same form that plaintiff is limited to lifting only 10 pounds maximum. *See* AR 1252–53. The inconsistency identified by the ALJ is supported by the record, therefore the Court cannot say the ALJ erred in discounting Dr. Hamilton's opinion based on its internal inconsistencies. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (explaining that where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings). Further, because this is a valid reason, other alleged errors in the ALJ's reasoning would be harmless. *See Carmickle*, 533 F.3d at 1162 (9th Cir. 2008) (including an erroneous reason among other is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

However, new evidence submitted to the Appeals Council after the ALJ issued a decision indicates this finding by the ALJ may not be supported by substantial evidence, as further discussed below. *See*, *infra*, Section IV.D.

2.  Dr. Haney and Dr. Donahue

Dr. Haney evaluated plaintiff at the initial level by reviewing her records in February 2020 and opined that plaintiff was at most moderately limited in her understanding and memory limitations, sustained concentration and persistence

1   limitations, and social interaction limitations. AR 353–56. At the reconsideration stage,

2   Dr. Robert Hander provided similar opinions regarding plaintiff's mental functioning. AR

3   368–70.

4       The ALJ found their opinions persuasive, discussing throughout the decision that

5   they were consistent with (1) plaintiff's medical record, (2) plaintiff's activities, and (3)

6   plaintiff's high school education. *See Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir.

7   2022) (finding that a court "clearly err[s] by overlooking the ALJ's full explanation"); AR

8   27–33.

9       With respect to the ALJ's first reason, the more consistent a medical opinion is

10  "with the evidence from other medical sources and nonmedical sources in the claim,"

11  the more persuasive is the medical opinion. *See* 20 C.F.R. § 404.1520c(c)(2). Here, the

12  ALJ specifically pointed out that no medical source has found plaintiff with marked or

13  extreme mental limitations. AR 27–29, 32. The ALJ also explained that plaintiff's record

14  includes reports of normal memory and concentration. AR 823, 864, 1216, 1269, 1346,

15  1349 1359–60, 1365–66, 1386, 1392–93, 1398. Additionally, plaintiff was able to

16  interact with her medical providers and often reported as alert and oriented. *See* AR

17  864, 906, 1216, 1269, 1346, 1349, 1359–60, 1365–66, 1386–87, 1392–93, 1398–99.

18  The ALJ's finding is supported by the record, therefore the ALJ could reasonably find

19  the medical opinions of Dr. Haney and Dr. Donahue persuasive based on their

20  consistency with plaintiff's medical record.

21      The ALJ's other reasons are not as convincing. For example, the ALJ does not

22  explain how plaintiff's high school education or her ability to drive, take care of her child,

23  and do household chores necessarily supports the doctors' findings about her mental

24

25

limitations in a work setting. Thus, the Court cannot say these were reasonable bases for finding the medical opinions of Dr. Haney and Dr. Donahue persuasive. However, because the ALJ provided at least one valid reason, supported by substantial evidence, in finding their opinions persuasive, any erroneous reason provided is deemed harmless. *See Carmickle*, 533 F.3d at 1162 (9th Cir. 2008).

3. Dr. Alto and Dr. Hander

Dr. Alto reviewed plaintiff's records in February 2020 at the initial level and opined that plaintiff can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push and or/pull. AR 351. Dr. Alto also opined that plaintiff can frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, can balance, and can frequently stoop, kneel, crouch, and crawl. AR 352. At the reconsideration stage, Dr. Hander provided similar opinions about plaintiff's physical functioning. AR 367–68.

The ALJ found both opinions persuasive, explaining throughout the decision that (1) they are "experts in Social Security disability programs," and (2) their opinions are consistent with plaintiff's medical record. *See* AR 26, 34–35.

With respect to the ALJ's first reason, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements" is a factor the ALJ may considering when evaluating a medical opinion. *See* 20 C.F.R. § 404.1520c(c)(5). However, the regulations make it clear that a medical opinion's supportability and consistency are "the most important factors" an ALJ must consider. *See* 20 C.F.R. § 404.1520c(a). Thus, Dr.

1    Alto's and Dr. Hander's expertise in Social Security rules is not in itself determinative of

2    whether the ALJ properly evaluated their medical opinions.

3         With respect to the ALJ's second reason, the more consistent a medical opinion

4    is "with the evidence from other medical sources and nonmedical sources in the claim,"

5    the more persuasive it is. *See* 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ found that

6    plaintiff's record indicates she did not have problems with walking, balancing, and lifting,

7    and that she had normal muscle strength. AR 33–34 (citing AR 691–92, 1040, 1304,

8    1308, 1320, 1360). The ALJ also pointed out that plaintiff has had limited physical

9    therapy since her alleged onset date. AR 34. Yet the ALJ failed to account for numerous

10   treatment notes—some of which were cited by the ALJ—that also show plaintiff had

11   muscle weakness, and back, neck, and extremity pain. *See* AR 881, 893, 908–09, 915,

12   1317–18, 1320, 1387, 1462, 1493, 1497. Plaintiff also engaged in physical therapy after

13   her alleged onset date. AR 892, 908. Given these contrasting treatment notes, the Court

14   cannot say the ALJ properly evaluated the medical opinions of Dr. Alto and Dr. Hander

15   based on their consistency with the rest of plaintiff's record. Accordingly, the Court finds

16   the ALJ erred.

17        An error that is inconsequential to the non-disability determination is harmless.

18   *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). But if the

19   errors of the ALJ result in a residual functional capacity (RFC) that does not include

20   relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.;*

21   *see also Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008);

22   *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848

23   Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). The ALJ's error here is not harmless,

24

25

because had the ALJ properly evaluated the medical opinions of Dr. Alto and Dr. Hander, this would potentially result in a different RFC and would potentially change the ALJ's determination of nondisability.

C.  Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

Plaintiff testified she is unable to work because of her mental health impairments, such as anxiety, depression, and panic attacks. AR 275. She explained her panic attacks are triggered by reading, talking, and being around people. AR 280. As for treatments, plaintiff stated she attends therapy sessions and takes medication. AR 277–78. Plaintiff also testified to having fibromyalgia and osteoarthritis. AR 276. She stated her treatments for her physical impairments include physical therapy, acupuncture, medication, and injections for her lower back, though she explained that the injections are only helpful for two days. AR 276–278.

Plaintiff testified she is able to lift at most 15 pounds, can stand and walk for 30 minutes before she has to sit down, and can only sit for 20 to 30 minutes. AR 280–81. She explained she has difficulty holding onto objects because her hands go numb. AR 281. She stated she can reach in front of her and overhead and get down on her knees, though she finds it painful. AR 281. She also stated she cannot walk up and down the stairs or crawl, and has trouble remembering things, such as names of people, places, and words. AR 282.

As for her daily activities, plaintiff testified she is able to prepare microwaveable meals, wash dishes, do laundry, and shop, though she tries to limit her shopping at night. AR 269–71. Plaintiff also takes care of her daughter, but she stated that when she

is "having a bad day," her parents take care of her daughter so she can rest. *See* AR 271.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, then the ALJ may only reject plaintiff's statements about severity of symptoms if the ALJ provides specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). The clear and convincing "standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Here, the ALJ discounted plaintiff's testimony about her mental and physical functioning, finding her "statements concerning the intensity, persistence and limiting effects" of her impairments "not supported by the weight of the evidence." AR 31.

1. Mental Health Symptoms

a. Hallucinations, Anxiety, and Depression

In discounting plaintiff's mental health symptoms, the ALJ first explained that plaintiff has not complained of any hallucinations since her alleged onset date, and there is "scant evidence of depression and anxiety." AR 31. These are not valid reasons, as they are not supported by substantial evidence. Plaintiff did not testify to having any hallucinations during the hearing, and the record shows many instances

1   where plaintiff was observed as anxious and depressed, or displaying depressive

2   symptoms, after plaintiff's alleged onset date. *See* AR 823–24 (evaluation stating her

3   reading difficulties "are likely worsened by [plaintiff's] anxiety"), 863 ("very anxious

4   during the exam," "she endorsed moderate anxiety and severe depression symptoms"),

5   1211–15, 1197–98, 1206, 1214–16, 1223, 1337, 1652. Thus, in discounting this portion

6   of plaintiff's testimony for these reasons, the ALJ erred.

7           b.  Ability to Understand, Memory, Concentration, Pace, and Persistence

8           The ALJ next discounted plaintiff's testimony regarding her ability to understand,

9   remember, and apply information, as well as her ability to concentrate, persist, and

10  pace, based on their inconsistencies with plaintiff's medical record. AR 31–32.

11  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's

12  subjective testimony." *Carmickle*, 533 F.3d at 1161. Here, the ALJ pointed out that since

13  plaintiff's alleged onset date, no medical source found her with extreme or marked

14  limitations with her ability to understand, remember, or apply information. AR 31. In

15  support of this finding, the ALJ highlighted Dr. Fritch's neuropsychological evaluation in

16  November 2019. See AR 31, 1733.

17          But Dr. Fritch's evaluation *supports* plaintiff's testimony—it shows that plaintiff's

18  processing speed, working memory, verbal and reading comprehension, perceptual

19  reasoning, auditory memory, oral reading fluency, and spelling, were either low or below

20  average. See AR 1773. Thus, based on the findings of Dr. Fritch alone, the ALJ erred in

21  discounting this portion of plaintiff's testimony.

22          However, the ALJ also highlighted other treatment notes in plaintiff's record. AR

23  32. For example, the cited evidence shows plaintiff presented alert and oriented, and

24

25                                              17

was repeatedly found to have no memory problems, intact memory, and having normal concentration and attention. *See* AR 864, 906, 1216, 1269, 1346, 1349, 1359–60, 1365–66, 1386–87, 1392–93, 1398–99. Given these findings, the ALJ could reasonably discount this portion of plaintiff's testimony.

The ALJ also found plaintiff's ability to drive, take care of her daughter, live independently, attend her medical appointments, cook, clean, shop, manage money, and watch movies inconsistent with plaintiff's testimony regarding her ability to understand, remember, and apply information. AR 31. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). None of the activities listed by the ALJ contradict plaintiff's testimony, and the ALJ does not explain how plaintiff's ability to perform these daily activities necessarily shows she is able to work. Thus, in discounting this portion of plaintiff's testimony based on her daily activities, the ALJ also erred. This error is harmless, however, because the ALJ has provided at least one valid reason, supported by substantial evidence, in discounting this portion of plaintiff's testimony. *See Carmickle*, 533 F.3d at 1162 (9th Cir. 2008).

c.   Ability to Interact

In discounting plaintiff's testimony regarding her difficulties being around others, the ALJ highlighted plaintiff's ability to interact adequately with her medical providers, shop, and patronize restaurants. AR 32. But again, none of these activities contradict with plaintiff's testimony—plaintiff admitted that while she did not like being around others, she is able to shop but preferred doing so at night. AR 271, 515. Thus, in

discounting this portion of plaintiff's testimony, the ALJ erred. Furthermore, at most, the activities cited by the ALJ reflect the basic elements of living a normal life, and do not supply a reasonable basis for discrediting plaintiff. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

2.  Physical Symptoms

The ALJ discounted plaintiff's testimony regarding her physical symptoms because it was inconsistent with (1) plaintiff's medical record, and (2) plaintiff's daily activities. AR 33–34.

With respect to the ALJ's first reason, as previously stated, contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, in discounting plaintiff's statements about her fibromyalgia, the ALJ explained that plaintiff's record only includes references to the impairment and is absent of any formal diagnosis based on a detailed physical examination. AR 34. But a lack of formal diagnosis specifically declared in plaintiff's record is not a valid reason to discount plaintiff's testimony, especially considering that fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory

tests to confirm the diagnosis.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

In discounting plaintiff's statements about her pain, the ALJ also pointed to plaintiff's treatment notes showing normal muscle strength and noted a lack of complaints about her difficulties with lifting, carrying, standing, walking or using her upper extremities. *See* AR 691–92, 1304, 1308, 1320, 1360. The ALJ's reasoning is not supported by substantial evidence. Ninth Circuit precedent dictates that in cases of fibromyalgia, the ALJ is recommended to consider the claimant's longitudinal records, as "symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Revels*, 874 F.3d at 663 (quoting Social Security Ruling ("SSR") 12-2p). Plaintiff's record shows that while she may have full muscle strength, she also had decreased range of motion, or if she had full range of motion, she had radiating pain throughout her lower extremities and back, muscle weakness, and diminished sensation and reflexes. *See* AR 797, 881–82, 886, 893, 909, 915, 1387, 1393, 1399, 1493, 1497, 1513. Given the varying levels of plaintiff's reports regarding her body pain, and in light of Ninth Circuit precedent regarding the unique conditions of fibromyalgia, the Court cannot say the ALJ reasonably discounted plaintiff's testimony regarding her fibromyalgia. Accordingly, the Court finds the ALJ erred in discounting this portion of plaintiff's testimony.

3.  Plaintiff's Treatment History

The ALJ also discounted plaintiff's testimony about her physical and mental symptoms because of her treatment history, but provides contradicting reasons in doing so. The ALJ first points out plaintiff "has been able to care for her physical and

emotional problems since the August 17, 2019 alleged onset date by seeking out medical treatment for them," but simultaneously discredits plaintiff's testimony because of her limited treatment history. *See* AR 32 ("she has not been treated emergently for a mental impairment," "the claimant has not been psychiatrically hospitalized", 34 ("claimant has not been hospitalized because of a physical, or mental, impairment(s) since August 17, 2019). Further, the ALJ's finding is not supported by the record. While an ALJ may reject symptom testimony "if the level or frequency of treatment is inconsistent with the level of complaints," *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), the record shows plaintiff engaged in both physical therapy and counseling after her alleged onset date. *See* AR 863, 892, 908, 915, 1195–1226, 1232, 1351, 1372. Thus, in discounting plaintiff's testimony for these reasons, the ALJ erred.

In sum, the ALJ erred in discounting certain portions of plaintiff's testimony. While substantial evidence supports the ALJ's finding that plaintiff's testimony regarding her ability to understand, remember, apply information, concentrate, persist, and pace is inconsistent with the record, the ALJ did not provide a rationale to discount the balance of plaintiff's testimony. As previously stated, an error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). But if the errors of the ALJ result in an RFC that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.; see also Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The ALJ's error here is not harmless, because had the ALJ properly evaluated

plaintiff's symptom testimony, the ALJ may have assessed a different RFC and thus

change the ALJ's determination on nondisability.

      D.  Whether New Evidence Submitted to the Appeals Council Undermines the

          ALJ's Decision

      Plaintiff contends that new evidence submitted to the Appeals Council after the

issuance of ALJ's decision undermines the ALJ's determination of nondisability. Dkt. 10

at 18–19.

      This Court is required to evaluate this evidence to determine whether the ALJ's

decision is supported by substantial evidence. *Brewes v. Commissioner of Social*

*Security*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for

the first time to the Appeals Council, which considers that evidence in denying review of

the ALJ's decision, the new evidence is part of the administrative record the district

court must consider it in determining whether the Commissioner's decision is supported

by substantial evidence).

      The additional evidence includes treatment notes from Blue Spring Chiropractic

from January 2021 to April 2021, and treatment notes from Dr. Hamilton. AR 2, 15–16,

44–234. The treatment notes from Blue Spring Chiropractic show the improvement in

plaintiff's overall body pain were not sustainable. *See* AR 150 (report of radiating pain in

neck, upper and lower back, shoulders), 48 ("improvement since initial exam on

1/25/2021"), 64 (3/20 "overall symptoms are getting better since last treatment"), 53

(3/30 "most of her pain is still the same"). In an evaluation rendered in June 2021, Dr.

Hamilton opined that plaintiff would be severely limited in lifting and carrying, such that

she is unable to lift at least two pounds or unable to stand or walk. AR 16. The other

treatment notes from Dr. Hamilton show plaintiff's clinical diagnoses of fibromyalgia,

chronic pain, sciatic, joint pain, anxiety, plaintiff's continued reports of chronic pain and

depression, and continued prescription of medication for those symptoms. *See* AR 170,

200, 203–33.

The ALJ discounted Dr. Hamilton's opinion in part due to its internal

inconsistencies, specifically regarding his contradictory finding about plaintiff's lifting

capabilities. *See*, *supra*, Section IV.B.2; AR 35. In light of the new opinion rendered by

Dr. Hamilton, the ALJ's evaluation of that medical opinion is no longer supported by

substantial evidence. On remand, the ALJ shall evaluate this evidence.

E.  Remedy

"'The decision whether to remand a case for additional evidence, or simply to

award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

an ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

at 668.

The Ninth Circuit has developed a three-step analysis for determining when to

remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed
> to provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand."

1

2
*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th

3
Cir. 2014)).

4
The Ninth Circuit emphasized in *Leon* that even when each element is satisfied,

5
the district court still has discretion to remand for further proceedings or for award of

6
benefits. *Leon*, 80 F.3d at 1045.

7
Here, plaintiff asks that the Court remand this case for further proceedings. *See*

8
Dkt. 10. The Court has found several errors in the ALJ's evaluation of the medical

9
opinions of Dr. Alto and Dr. Hander, and plaintiff's testimony. The Court has also found

10
that new evidence submitted by plaintiff indicates the ALJ's evaluation of Dr. Hamilton's

11
medical opinion evidence may not be supported by substantial evidence. On remand,

12
the ALJ shall reevaluate plaintiff's testimony, evaluate the medical opinions of Dr. Alto

13
and Dr. Hander, and consider the additional evidence. The ALJ shall then reevaluate all

14
relevant steps of the disability evaluation process and conduct all proceedings

15
necessary to reevaluate the disability determination in light of this order.

16
Based on a review of the record, the Court concludes that the record is not free

17
from important and relevant conflicts, such as conflicts in the medical evidence.

18
Therefore, this matter should be reversed for further administrative proceedings,

19
including a *de novo* hearing, not with a direction to award benefits. *See id.*

20
<u>CONCLUSION</u>

21
Based on the foregoing discussion, the Court concludes the ALJ improperly

22
determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and

23
remanded for further administrative proceedings.

24
Dated this 21st day of February, 2023.

25

Theresa L. Fricke
United States Magistrate Judge